**SO ORDERED.**

**SIGNED this 4th day of April, 2012.**



Janice Miller Karlin
United States Bankruptcy Judge

---

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:
**Dustin Jay Westby**                              **Case No. 11-40986**
**Brandi Michelle Westby,**                        **Chapter 7**

     **Debtors.**

---

## Memorandum Opinion and Order
## Overruling the Trustee's Objection to Exemption

Under new legislation effective April 14, 2011, a Kansas debtor in bankruptcy is entitled to exempt from the bankruptcy estate the right to receive the federal and state earned income tax credit ("EIC").[1] A general debtor in Kansas not proceeding under bankruptcy, however, is not entitled to this protection. The Trustee has objected to the Debtors' use of the exemption based on the Uniformity and Supremacy Clauses of the United States Constitution, as well as the textual application of the statute.

Because the Kansas exemption statute is a state, rather than a federal enactment on the subject of bankruptcy, this Court finds no Uniformity Clause

---

[1] S. 12, 2011 Reg. Sess. (Kan. 2011), to be codified at K.S.A. § 60-2315.

violation. In addition, because of the concurrent nature of state/federal authority in bankruptcy, and because the Trustee has shown no express conflict between the exemption statute and the Bankruptcy Code, nor an implied conflict between the given exemption and the language and goals of the Bankruptcy Code, the Court finds no Supremacy Clause violation. The Court also rejects the Trustee's additional challenges based on the reference within the exemption to "the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 *et seq*.)," reprioritization of the payment of claims, unauthorized transfer, conflict with portions of the Internal Revenue Code, and the application of the "right to receive tax credits" language from the exemption. The Trustee's objection to the exemption[2] is overruled.

## Findings of Fact

### I. Factual History[3]

On June 22, 2011, Debtors Dustin and Brandy Westby filed a voluntary Chapter 7 petition.[4] The Westbys' Schedule C claimed as exempt the "Earned Income Credit" with a current value of "Unknown."[5] The Westbys received their federal and state tax refunds on or about March 5, 2012.[6] The Westbys' total federal refund received was

---

[2] Doc. 10 (objection).

[3] The following facts are taken from the parties' bankruptcy petition, supporting schedules, and additional notices to the court.

[4] Doc. 1.

[5] *Id.* at 20.

[6] Doc. 42.

2

$6702, and their total federal EIC was $5751.[7] The Westbys received a total state refund of $1490; their total state EIC was $1035.[8]

## II. Procedural History

The Trustee timely objected to the Westbys' attempt to exempt the 2011 EIC under Kansas Senate Bill No. 12 ("Senate Bill No. 12"),[9] and the Westbys filed a response.[10] The Trustee's objection to the EIC exemption contained a constitutionality challenge to the Senate Bill No. 12 exemption.[11] The Court certified that constitutional objection to the Kansas Attorney General, who has intervened in this case. Although the Westbys received their bankruptcy discharge on September 30, 2011, this case remains pending as a Chapter 7 case.

---

[7] *Id.*

[8] *Id.*

[9] Doc. 10.

[10] Doc. 22.

[11] *See In re Gifford*, Case No. 11-40589, Doc. 44 (Trustee's memorandum in support of amended objection to Debtors' exemption of EIC). The Court originally used the *Gifford* case as its lead case on the constitutional challenge to the EIC exemption, and most of the briefs on the matter were filed in that case. The Kansas Attorney General, intervening in this matter after the constitutional challenge to the statute, participated in the briefing of these issues. The Court has considered all briefs filed, including the amicus brief of Trustee Robert L. Baer filed in support of the Trustee's position, Doc. 59 in the *Gifford* case, and the amicus briefs of the National Association of Consumer Bankruptcy Attorneys ("NACBA"), Doc. 63, and Debtor Carrie Lynn Rolin, Doc. 49, both filed in support of the Debtors' position in the *Gifford* case.

The Trustee objects to the amicus brief of the NACBA because it was filed in *In re Rolin*, Case No. 11-40950, rather than in *Gifford*. The Court expressly granted amicus the permission to file a brief in any case, however, and directed that it would be considered in the resolution of the present objection. As of the date this opinion is issued, this Court has dozens of pending EIC cases, and allowing briefing in this fashion was the most expeditious way to be sure the Court considered all the arguments that might be raised in any of those cases without requiring the redundancy of filing the briefs in each case. In addition, because the Trustee was given, and took, the opportunity to respond to the amicus brief of the NACBA, the Trustee has not been prejudiced by the NACBA's participation.

3

### III.  The Earned Income Credit

The federal EIC, found in the Internal Revenue Code ("IRC") at 26 U.S.C. § 32, is characterized as a refundable tax credit.[12] An individual's tax credits are applied to the tax otherwise owed for a given year, and are considered an overpayment of tax under the IRC when they exceed the tax owed, thereby resulting in a tax refund.[13] "An individual who is entitled to an earned-income credit that exceeds the amount of tax he owes thereby receives the difference as if he had overpaid his tax in that amount."[14] The Supreme Court has noted that the federal EIC "was enacted to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices."[15] "Primarily, the EIC benefits low-income married couples and heads of households with qualifying dependent children."[16] Kansas's EIC is computed as a percentage of the federal EIC.[17]

---

[12] *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 854 (1986).

[13] *In re Montgomery*, 224 F.3d 1193, 1194 (10th Cir. 2000). The Tenth Circuit noted that "EICs are to be treated as tax refunds." *Id.* at 1195.

[14] *Sorenson*, 475 U.S. at 855.

[15] *Id.* at 864.

[16] *Crowson v. Zubrod (In re Crowson)*, 431 B.R. 484, 492 (10th Cir. BAP 2010).

[17] K.S.A. § 79-32,205. Currently, the Kansas tax credit is 18% of the federal EIC.

4

## Conclusions of Law

### I.    An Introduction to Senate Bill No. 12 and Exemptions under the  Bankruptcy Code

Under the Bankruptcy Code, when a debtor files a petition for bankruptcy relief, an estate is created.[18] That bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[19] The Bankruptcy Code does, however, permit the exemption of certain property from the estate.[20] The Bankruptcy Code includes a list of federal exemptions available to the debtor,[21] but permits a state to "opt-out" of the federal exemptions in favor of state-law exemptions, when that state specifically excludes the use of the federal exemptions.[22] Kansas has opted out of the federal exemption scheme.[23] Because Kansas has opted out of using the federal exemptions, the Kansas debtor may exempt from the estate those "State or local law" exemptions that are "applicable as of the filing date."[24]

The Trustee challenges the constitutionality of the newest exemption.  Senate Bill No. 12, titled "AN ACT concerning civil procedure; relating to bankruptcy; exempt

---

[18]  11 U.S.C. § 541(a) ("The commencement of a case under . . . this title creates an estate.").

[19]  *Id.* § 541(a)(1).

[20]  *See id.* § 522(b)(1) ("Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.").

[21]  *Id.* § 522(d).

[22]  *Id.* § 522(b)(2).

[23]  K.S.A. § 60-2312 (prohibiting, with exception, individual debtors from electing federal exemptions).

[24]  11 U.S.C. § 522(b)(3)(A); K.S.A. §§ 60-2301 through 60-2315 (Kansas exemptions).

5

property; earned income tax credit," states as follows:

> Section 1.  An individual debtor under the federal bankruptcy reform act of 1978 (11 U.S.C. §101 et seq.), may exempt the debtor's right to receive tax credits allowed pursuant to section 32 of the federal internal revenue code of 1986, as amended, and K.S.A. 2010 Supp. 79-32,205, and amendments thereto. An exemption pursuant to this section shall not exceed the maximum credit allowed to the debtor under section 32 of the federal internal revenue code of 1986, as amended, for one tax year. Nothing in this section shall be construed to limit the right of offset, attachment or other process with respect to the earned income tax credit for the payment of child support or spousal maintenance.
>
> Sec. 2.  This act shall take effect and be in force from and after its publication in the Kansas register.[25]

The statute was effective on April 14, 2011, with its publication in the Kansas Register.[26]

The legislative history of Senate Bill No. 12 shows that the exemption was proposed and supported based on concerns regarding the ability of "low income Kansans . . . to maintain and improve their lives."[27] The sponsor of the exemption further stated: "Under current law, the debtor can be forced to forfeit the [refund of the EIC]. Such forfeiture is counterproductive and further inhibits the debtor's ability to recover, making it more likely that the debtor will come to require state services."[28] The Kansas Attorney General, therefore, argues that the exemption is based on a

---

[25] S. 12, 2011 Reg. Sess. (Kan. 2011), to be codified at K.S.A. § 60-2315.

[26] *See* Vol. 30, No. 15 Kan. Reg. page 437 (April 14, 2011) (publication).

[27] Minutes of the House Judiciary Committee, 2011 Reg. Sess., Attach. No. 5 (Kan. Mar. 3, 2011) (Testimony Presented to House Judiciary Committee by Sen. John Vratil), attached as exhibit in *In re Gifford*, Case No. 11-40589, Doc. 53.

[28] *Id.*

6

"legitimate state interest—protecting the welfare of children in low income families and promoting reliance on work instead of the public dole."[29] Notwithstanding those laudable goals, there is no legislative history found by this Court (or cited by the parties) that specifies why the exemption was given only to debtors in bankruptcy but not to general debtors in Kansas outside of bankruptcy.

In a challenge to a claimed exemption, the objecting party—here the Trustee—has the "burden of proving that the exemptions are not properly claimed."[30] Furthermore, in cases challenging the constitutionality of a state statute, a Court must apply a presumption that the act of the state legislature is constitutional.[31] In addition, under Kansas law, exemption statutes are to be liberally construed for the benefit of the debtor.[32]

The Court has jurisdiction to decide contested matters such as the Trustee's objection to exemption.[33] This matter constitutes a core proceeding.[34]

---

[29] *In re Gifford*, Case No. 11-40589, Doc. 53 at p. 5.

[30] Fed. R. Bankr. P. 4003(c).

[31] *Hopkins v. Okla. Pub. Employees Ret. Sys.*, 150 F.3d 1155, 1160 (10th Cir. 1998).

[32] *Hodes v. Jenkins (In re Hodes)*, 308 B.R. 61, 65 (10th Cir. BAP 2004) ("Under Kansas law, exemption statutes are to be liberally construed in favor of those intended by the legislature to be benefitted."); *In re Hall*, 395 B.R. 722, 730 (Bankr. D. Kan. 2008) (stating that "the Kansas Supreme Court has directed that exemption claims are to be liberally construed in favor of debtors").

[33] 28 U.S.C. § 157(a) and 11 U.S.C. § 1334(a)–(b); *see also* Standing Order dated August 1, 1984, effective July 10, 1984, referenced in D. Kan. Rule 83.8.5 (reference from the District Court for the District of Kansas of all cases and proceedings in, under, or related to Title 11 to the District's bankruptcy judges).

[34] 28 U.S.C. § 157(b)(2)(B).

## II.    The Trustee Has Standing to Raise an Objection to Exemption and the Matter is Ripe for Consideration

### A. Standing

The Court must assure itself of the Trustee's standing to object to a debtor's claimed exemption.[35] Standing jurisprudence encompasses both constitutional standing and prudential standing.[36] Constitutional standing requires the presence of a "case or controversy," and requires that the individual has suffered "an 'injury in fact' that a favorable judgment will address."[37] Prudential standing requires that the litigant assert its own particular rights, and forbids a litigant from "'rest[ing] his claim for relief on the legal rights or interest of third parties.'"[38]

In its analysis, the Court first notes that Bankruptcy Rule 4003(b)(1) provides that "a party in interest may file an objection to the list of property claimed as exempt." Although the phrase "party in interest" is not a defined term in the Bankruptcy Code or Rules, it is generally accepted that a Trustee is a party in interest.[39]

---

[35]    *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (noting the limit of courts' jurisdiction to actual cases and controversies and the requirement of standing to sue).

[36]    *The Wilderness Soc'y v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011).

[37]    *Id.* (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

[38]    *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[39]    *See, e.g., Schwab v. Reilly*, __ U.S. __, 130 S. Ct. 2652 (2010) (referring throughout the Court's discussion of the case to the trustee as an "interested party"); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (concluding that a trustee who does not timely file an objection to a debtor's exemption is barred from later asserting that the exemption is improperly claimed); *Russell v. Kuhnel (In re Kuhnel)*, 495 F.3d 1177, 1180 (10th Cir. 2007) (addressing the trustee's objection to exemption under Rule 4003); *Rupp v. Duffin (In re Duffin)*, 457 B.R. 820 (10th Cir. BAP 2011) (referring throughout to the trustee's objection to the debtor's claimed exemption); *see also Edmonston v. Murphy (In re Edmonston)*, 107 F.3d 74, 76–77 (1st Cir. 1997) (concluding that a trustee is a "party in interest" based on

8

The Attorney General argues that the Trustee lacks standing because a trustee's role is to stand in the shoes of a debtor in bankruptcy, and the Trustee cannot assert the rights of a general debtor in Kansas, not a party to the bankruptcy, who may be injured by the unavailable exemption of EIC.[40] To the contrary, the Trustee is not limited to considerations only affecting the debtor in bankruptcy. As "the representative of the estate,"[41] the Trustee is under a duty to "collect and reduce to money the property of the estate."[42] Despite this statutory mandate, the Attorney General argues that an injury to a creditor is "incidental" to the bankruptcy. Again, however, the Trustee's duty to collect and account for the property of the estate, so that estate property can be distributed to creditors,[43] is not an incidental feature of the Code.

Bankruptcy serves two purposes. While its primary purpose is to give the debtor in bankruptcy a fresh start, it is also designed to ensure the fair and equitable

---

Rule 4003).

[40] *In re Gifford*, Case No. 11-40589, Doc. 53 at 10–13.

[41] 11 U.S.C. § 323(a).

[42] *Id.* § 704(a)(1) (duties of chapter 7 Trustee).

[43] *See C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.)*, 636 F.3d 1257, 1261 (10th Cir. 2011) ("Chapter 7 trustees have extensive powers and responsibilities relating to the liquidation of the bankruptcy estate. Trustees must: collect and liquidate all of the estate's property; close the estate as efficiently as possible; account for all property received; investigate the debtor's financial affairs; examine claims against the estate and reject those that are not meritorious; and may (and sometimes must) bring legal action on behalf of the estate."); *see also Young v. Higbee Co.*, 324 U.S. 204, 210 (1945) ("[H]istorically, one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another.").

9

treatment of the creditors of a debtor in bankruptcy.[44] Whether an exemption is constitutional or properly claimed most certainly affects the property available to the estate that is available for creditors. The Trustee is a party in interest with standing to object to the exemption claimed herein.

## B. Ripeness

The Court must also determine whether there exists a justiciable dispute. Ripeness "may be examined . . . sua sponte."[45] The doctrine of ripeness "aims 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"[46] "Like standing, the ripeness inquiry asks whether the challenged harm has been sufficiently realized . . . [t]he ripeness issue, however, focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention."[47] The "[r]ipeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim."[48]

"In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may

---

[44] *See Schwab v. Reilly*, ___ U.S. ___, 130 S. Ct. 2652, 2667 (2010) (acknowledging that exemptions in bankruptcy aid the primary purpose of bankruptcy of providing a "fresh start" post-bankruptcy, but noting that this policy must be balanced with "the economic harm that exemptions visit on creditors").

[45] *Keyes v. Sch. Dist. No. 1*, 119 F.3d 1437, 1444 (10th Cir. 1997) (emphasis omitted).

[46] *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1249 (10th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

[47] *Id.* (internal quotations omitted).

[48] *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008).

10

not occur at all."[49] To determine "whether a claim is ripe, a court must look at (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration."[50] The first inquiry asks "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[51] This first prong is met when the matter "does not involve uncertain or contingent events that may not occur at all (or may not occur as anticipated)."[52] The second inquiry asks "whether the challenged action creates a direct and immediate dilemma for the parties."[53]

Here, the Westbys filed their 2011 tax returns and received federal and state tax refunds on or about March 5, 2012.[54] The Westbys received a federal EIC of $5751, and a federal refund of $6702. The Westbys received a state EIC of $1035, and a state refund of $1490. As a result, the amount of the claimed exemption is now a fixed, certain figure. The claimed exemption now also directly reduces the value of the estate. Both prongs of the ripeness inquiry are, therefore, satisfied.

---

[49] *Tarrant Reg'l Water Dist.*, 656 F.3d at 1250 (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006)).

[50] *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1237 (10th Cir. 2004) (internal quotation omitted).

[51] *Salt Lake Tribune Publ'n Co. v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1140 (10th Cir. 2006).

[52] *Chavez v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275, 1281 (10th Cir. 2010).

[53] *Salt Lake Tribune Publ'n Co.*, 454 F.3d at 1140.

[54] Doc. 42.

11

### III.    Senate Bill No. 12 Does Not Violate the Uniformity Clause

### A.  The Uniformity Clause Generally

The Uniformity Clause of the United States Constitution grants Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."[55] Because Senate Bill No. 12 treats Kansas debtors in bankruptcy differently than Kansas debtors outside of bankruptcy, thereby impacting creditors differently depending on whether the debtor has filed a bankruptcy petition, the Trustee claims that Senate Bill No. 12 violates the Uniformity Clause.[56]

A review of Supreme Court jurisprudence considering the Uniformity Clause is helpful to the Court's consideration of the Trustee's challenge, because the cases interpreting the Uniformity Clause use varying terms to extrapolate its meaning. For example, in a very early Supreme Court case considering the Uniformity Clause, *Sturges v. Crowninshield*,[57] the Court appeared to use a preemption analysis to determine whether a New York statute on the subject of bankruptcies was valid. In that case, the Court recognized Congress's power to establish a bankruptcy system under the Uniformity Clause, but noted that Congress had not done so.[58] Because of this, the Supreme Court noted: "It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the states. It is

---

[55]  U.S. Const. art. I, § 8, cl. 4. The Uniformity Clause is alternately referred to as the Bankruptcy Clause.

[56]  *In re Gifford*, Case No. 11-40589, Doc. 44 at 9–24.

[57]  17 U.S. 122 (1819).

[58]  *Id.* at 195–96.

Case 11-40986    Doc# 45    Filed 04/04/12    Page 12 of 51

not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the states."[59] The Court concluded that, "until the power to pass uniform laws on the subject of bankruptcies be exercised by congress, the states are not forbidden to pass a bankrupt law."[60] Because there was no act of Congress with which the New York statute could have conflicted, the Supreme Court found no Uniformity Clause problem.

The facts of *Sturges* are unique—there was no federal bankruptcy system in place when it was decided. In one of the earliest cases interpreting a modern bankruptcy statute under the Uniformity Clause, *Hanover National Bank v. Moyses*,[61] the Supreme Court more squarely addressed the concept of uniformity. The Court concluded that the exemption provisions of the Bankruptcy Act of 1898, which did *not* contain uniform federal exemptions but recognized general state exemption statutes, satisfied the uniformity requirement. The Court stated: "The laws passed on the subject must, however, be uniform throughout the United States, but that uniformity is geographical, and not personal, and we do not think that the provision of the act of 1898 as to exemptions is incompatible with the rule."[62] The Court found that geographic uniformity was present when "the trustee takes in each State whatever would have been available to the creditors if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain

---

[59] *Id.* at 196.

[60] *Id.*

[61] 186 U.S. 181 (1902).

[62] *Id.* at 188.

Case 11-40986   Doc# 45   Filed 04/04/12   Page 13 of 51

particulars differently in different states."[63]

In other words, in this very early bankruptcy case, the Court found "uniformity" in the fact that Congress, through the Bankruptcy Act of 1898, had uniformly granted states the power to determine a debtor's exemptions, and thus the size of the bankruptcy estate. The Court focused on federal procedural uniformity, rather than uniformity from state to state or person to person.

Therefore, *Sturges* and *Moyses* indicate the following views of the Supreme Court: the states and federal government have concurrent jurisdiction in bankruptcy, although only Congress has the power to establish a uniform system of bankruptcy. And once Congress passes one uniform act, if that system has differing effects on citizens of different states based on a particular state's laws, that result is acceptable. That position was reaffirmed in *Stellwagen v. Clum*,[64] when the Supreme Court stated:

> Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the States affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the States.[65]

The *Stellwagen* Court emphasized the flexibility of the Uniformity Clause, noting again

---

[63] *Id.* at 190.

[64] 245 U.S. 605 (1918).

[65] *Id.* at 613.

14

that the substantive effect or operation of bankruptcy legislation need not be uniform across state lines.

Ten years later, in 1929, the Supreme Court again looked to the Uniformity Clause in a challenge to a state enactment on bankruptcies. In *International Shoe Co. v. Pinkus*,[66] the Supreme Court considered whether the Arkansas "insolvency law"—providing for the surrender of nonexempt property, liquidation by a trustee, payment of debts under court direction, classification of creditors, order of payments, preferences, and discharge—was valid against the existing federal Bankruptcy Act. Like it did in *Sturges*, the Supreme Court relied on a preemption analysis.[67]

First, the Court noted Congress's "unrestricted" and "paramount" power "to establish uniform laws on the subject of bankruptcies."[68] The Supreme Court then continued:

> In respect of bankruptcies the intention of Congress is plain. The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations.

---

[66] 278 U.S. 261 (1929).

[67] *Id.* at 264–65.

[68] *Id.* at 265.

15

The Court concluded that it was "clear" the Arkansas insolvency statute was "within the field entered by Congress when it passed the Bankruptcy Act," and, therefore, invalidated the Arkansas statue.[69] Ultimately, it was preemption, rather than the Uniformity Clause, that provided the basis for the Supreme Court's conclusion, and the Court did not expound on the pronouncements of *Moyses* or *Stellwagen* concerning the Uniformity Clause.

The concurrence in *Vanston Bondholders Protective Committee v. Green*,[70] a Supreme Court case decided about twenty years later, addressed a Uniformity Clause complaint in more detail. In *Green*, New York contract law provided that a claim for interest on interest was void, and, therefore, the claim could not be presented in bankruptcy for payment under the 1898 Bankruptcy Act's recognition of state contract law.[71] The claimant argued that state law should not be the determining force on whether a claim is enforceable in bankruptcy.[72] Citing *Moyses*, Justice Frankfurter rejected this argument under the Uniformity Clause, stating:

> But this misconceives the purpose and settled understanding of the bankruptcy clause of the Constitution. The Constitutional requirement of uniformity is a requirement of geographic uniformity. It is wholly satisfied when existing obligations of a debtor are treated alike by the bankruptcy administration throughout the country regardless of the State in which the bankruptcy court sits. To establish uniform laws of bankruptcy does not mean

---

[69] *Id.* at 265–66.

[70] 329 U.S. 156 (1946) (Frankfurter, J, concurrence).

[71] *Id.* at 171–72.

[72] *Id.*

16

wiping out the differences among the forty-eight States in their laws governing commercial transactions. The Constitution did not intend that transactions that have different legal consequences because they took place in different States shall come out with the same result because they passed through a bankruptcy court. In the absence of bankruptcy such differences are the familiar results of a federal system having forty-eight diverse codes of local law. These differences inherent in our federal scheme the day before a bankruptcy are not wiped out or transmuted the day after.[73]

According to Justice Frankfurter, the settled law under the Uniformity Clause required only that the *federal* system of bankruptcy be uniform in its particulars, not that the individual states be required to give up their differences in state law.

In 1974, the Supreme Court again addressed the Uniformity Clause in the regional rail reorganization cases in *Blanchette v. Connecticut General Ins. Corps.*[74] At the time, the United States was experiencing a potential transportation crisis when eight major railroads filed reorganization proceedings under the Bankruptcy Act.[75] Congress responded by passing the Rail Act, which reorganized each railroad and restructured the railroads into a new, single system for continued operation.[76]

In response to a Uniformity Clause challenge to the Rail Act—brought because "the Rail Act's provisions apply only to railroads in reorganization in the 'region,'" and

---

[73] *Id.* at 172–73.

[74] 419 U.S. 102 (1974).

[75] *Id.* at 108.

[76] *Id.* at 108–17.

therefore lacked geographic uniformity[77]—the Supreme Court reiterated its relaxed view of the uniformity requirement. Rejecting the geographic uniformity notion, the Supreme Court relied on "the flexibility inherent in the constitutional provision."[78] The Court also noted that the Uniformity Clause permitted Congress "to take into account differences that exist between different parts of the country, and to fashion legislation to resolve geographically isolated problems."[79] The Supreme Court concluded: "The uniformity clause requires that the Rail Act apply equally to all creditors and all debtors, and plainly this Act fulfills those requirements. No provision of the Act restricts the right of any creditor wheresoever located to obtain relief because of regionalism."[80] The Court seemed to indicate that the Rail Act was uniform merely because it uniformly applied to all debtors and creditors falling within its purview.

A few years later, the Supreme Court decided *Butner v. United States*,[81] a case that affirms these principles regarding the Uniformity Clause. In *Butner*, the Court was asked to determine whether the right to rents collected after a bankruptcy but before a foreclosure should be governed by the federal rule of equity or State law.[82] The Court first noted that Congress had not chosen, in that instance, "to exercise its power to fashion" a rule on the subject, although the constitutional authority of Congress to

---

[77] *Id.* at 156–57.

[78] *Id.* at 158.

[79] *Id.* at 159.

[80] *Id.* at 160 (internal citations and quotations omitted).

[81] 440 U.S. 48 (1979).

[82] *Id.* at 50.

18

do so was "clear" under the Uniformity Clause.[83] The Court noted, with approval, that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[84] The Court also noted that, because of the grant of authority to Congress to pass uniform laws, state laws are suspended only "to the extent of actual conflict" with the bankruptcy system.[85] Again, the Supreme Court announced that a state statute touching on the subject of bankruptcy was impermissible only if it conflicted with the federal system Congress had chosen under its power to do so given by the Uniformity Clause.

In another railroad case, *Railway Labor Executives' Assoc. v. Gibbons*,[86] the Supreme Court—for the first, and only, time—struck down a statute based on Uniformity Clause grounds. Therein, the Supreme Court considered a federal statute, the Rock Island Railroad Transition and Employee Assistance Act ("RITA"), which was hurriedly passed by Congress to prevent the bankruptcy liquidation of the Chicago, Rock Island and Pacific Railroad Co.[87] In a challenge to RITA's constitutionality under the Uniformity Clause, the Supreme Court first concluded that Congress's passage of RITA was an exercise of its powers under the Uniformity Clause, rather than the Commerce Clause.[88] The Court reiterated that, under the Uniformity Clause,

---

[83]  *Id.* at 54.

[84]  *Id.*

[85]  *Id.* at 54 n.9.

[86]  455 U.S. 457 (1982).

[87]  *Id.* at 459–60.

[88]  *Id.* at 465–66.

19

"uniformity does not require the elimination of any differences among the States in their laws governing commercial transactions."[89] Although the Court referenced its' previous Rail Act cases, it noted the significant difference that RITA was enacted in "response to the problems caused by the bankruptcy of *one* railroad."[90] As such, the Court found that RITA was "a private bill," and "not within the power of Congress" under the Uniformity Clause.[91] The Supreme Court noted: "A law can hardly be said to be uniform throughout the country if it applies only to one debtor and can be enforced only by the one bankruptcy court having jurisdiction over that debtor."[92]

Importantly, the Supreme Court stated: "Our holding today does not impair Congress' ability under the Bankruptcy Clause to define classes of debtors and to structure relief accordingly. We have upheld bankruptcy laws that apply to a particular industry in a particular region. The uniformity requirement, however, prohibits Congress from enacting a bankruptcy law that, by definition, applies only to one regional debtor."[93] Although this case strikes down a statute as invalid under the Uniformity Clause, it is important to this discussion *not* for what the Court found to be invalid, but for its continued recognition of the flexibility of the Uniformity Clause despite this narrow finding of invalidity.

---

[89] *Id.* at 169.

[90] *Id.* at 470.

[91] *Id.* at 471.

[92] *Id.*

[93] *Id.* at 473.

Case 11-40986   Doc# 45   Filed 04/04/12   Page 20 of 51

In 1978, Congress passed the Bankruptcy Reform Act,[94] and the modern view of bankruptcy has evolved with a comprehensive federal structure *and* an opt-out provision allowing for state-law exemptions. The opt-out provision has not been before the Supreme Court on a Uniformity Clause challenge,[95] and this Court has not been asked to consider the constitutionality of the opt-out provision.[96] The Supreme Court has, however, recently recognized the concurrent actions of Congress and states in the bankruptcy arena without bothering to reference the Uniformity Clause.

For example, in *Owen v. Owen*,[97] the Court was asked to consider the effect of lien-avoidance provisions of the Bankruptcy Code on state-exemptions in opt-out states.[98] The Court, without reference to the Uniformity Clause or any considerations of preemption, noted: "If a State opts out, then its debtors are limited to the exemptions provided by state law. Nothing in [§ 522(b)] (or elsewhere in the Code) limits a State's

---

[94] Pub. L. No. 95-598, 92 Stat. 2549.

[95] The Circuit Courts that have considered the issue have concluded that the opt-out provision of the Bankruptcy Code passes Constitutional muster. *See Storer v. French (In re Storer)*, 58 F.3d 1125 (6th Cir. 1995) (due process and equal protection challenges); *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983) (Uniformity Clause challenge); *In re Sullivan*, 680 F.2d 1131 (7th Cir. 1982) (Uniformity Clause challenge); *In re Stinson*, 36 B.R. 946 (9th Cir. BAP 1984) (Uniformity Clause challenge).

[96] *See In re Gifford*, Case No. 11-40589, Doc. 61 at 8 ("The Trustee understands that Congress has authorized each state to enact its own exemption schemes that may apply in bankruptcies. The Trustee does not challenge this delegation of power to the states."). Amicus Trustee Baer obliquely argues that § 522 must be read narrowly to prevent it from being unconstitutional, but does not expand and argue that Congress's authorization of state-created exemptions under § 522 is unconstitutional under the Uniformity Clause. *See id.* Doc. 59 at 12 ("Only by narrowly reading § 522 as authorizing States to restrict debtors to use non-federal exemptions that States allow residents to use both inside and outside of bankruptcy saves 11 U.S.C. § 522 from being unconstitutional.").

[97] 500 U.S. 305 (1991).

[98] *Id.* at 309–12.

21

power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."[99] The Supreme Court has recently stated, therefore, that once a state opts-out of the federal exemption scheme under the Bankruptcy Code, that state has incredibly broad leeway to fashion exemptions in the manner it chooses.

The long line of cases discussed herein provide the following general rules. First, the Uniformity Clause has never been the basis for striking down a *state* enactment. Second, the Uniformity Clause has rarely been the basis for invalidating a *federal* enactment, and then only when *Congress* has passed a bankruptcy law that singles out an individual debtor and its creditors. The Supreme Court has indicated that as long as state statutes are not in conflict with whatever federal bankruptcy law is in place, there is no Uniformity Clause violation.

### B. Bankruptcy Only Exemption Statutes Under the Uniformity Clause

Since the implementation of the 1978 Bankruptcy Reform Act's opt-out provision, a handful of states have adopted bankruptcy specific exemptions—exemptions available to a debtor in bankruptcy but not available to a debtor in that state outside of bankruptcy. As a result, courts have been asked to consider the scope of the Uniformity Clause in the face of challenges to state exemption laws treating debtors in bankruptcy differently than general debtors outside of the bankruptcy system, as is the case herein.

The results of those challenges have been mixed. In a case from the Bankruptcy

---

[99] *Id.* at 308.

Appellate Panel for the Sixth Circuit, *In re Schafer*,[100] the Court struck down a Michigan bankruptcy only exemption statute as an unconstitutional violation of the Uniformity Clause. In *Schafer*, the BAP first determined that the Uniformity Clause applies to state statutes, relying on the desire of the framers of the Constitution to deliver a national system of bankruptcy.[101] The BAP then concluded that uniformity was not present, because the state bankruptcy only exemption statute differentiated between the protections available to a debtor outside of bankruptcy and inside bankruptcy, relying on the language from the Supreme Court's 1902 *Moyses* decision that "a statute is uniform 'when the trustee takes in each state whatever would have been available to the creditor if the bankrupt[cy] law had not been passed.'"[102] A few additional bankruptcy courts have also found bankruptcy specific exemption statutes to be a violation of the Uniformity Clause.[103]

---

[100] 455 B.R. 590 (6th Cir. BAP 2011). The *Schafer* decision analyzes the same bankruptcy specific Michigan statute about which four published bankruptcy court decisions from Michigan came to varying conclusions: *In re Reinhart*, 460 B.R. 466, 466 (Bankr. E.D. Mich. 2011) (addressing Uniformity Clause challenge to bankruptcy specific exemption and concluding, on alternate grounds, that the opt-out clause "permit[s] a debtor to exempt in bankruptcy only the property that the debtor can exempt from collection on a judgment under state law" and, therefore, finding the bankruptcy specific exemption to be ineffective); *In re Jones*, 428 B.R. 720, 727 (Bankr. W.D. Mich. 2010) (concluding that the bankruptcy specific exemption does not conflict with the requirements granted to Congress through the Uniformity Clause); *In re Pontius*, 421 B.R. 814, 819–21 (Bankr. W.D. Mich. 2009) (finding the bankruptcy specific exemption unconstitutional under the Uniformity Clause); and *In re Wallace*, 347 B.R. 626, 632–34 (Bankr. W.D. Mich. 2006) (finding the bankruptcy specific exemption unconstitutional under the Uniformity Clause).

[101] *In re Schafer*, 455 B.R. at 601.

[102] *Id.* at 606 (quoting *Hanover National Bank v. Moyses*, 186 U.S. 181, 190 (1902)).

[103] *See, e.g.*, *In re Mata*, 115 B.R. 288, 291 (Bankr. D. Colo. 1990); *In re Lennen*, 71 B.R. 80, 83 (Bankr. N.D. Cal. 1987); *In re Reynolds*, 24 B.R. 344, 347 (Bankr. S.D. Ohio 1982).

23

In other cases, the courts have rejected Uniformity Clause challenges to state bankruptcy specific exemption statutes. The Ninth Circuit BAP concluded, in *Sticka v. Applebaum (In re Applebaum),*[104] that a California bankruptcy only exemption did not violate the Uniformity Clause. The *Applebaum* Court began by noting: "The uniformity requirement pertains only to Congress; it is an affirmative limitation or restriction upon Congress's power, not a limitation on the states."[105] Citing the railroad cases, the BAP then concluded that the Uniformity Clause required only "that federal bankruptcy laws apply equally in form (but not necessarily in effect) to all creditors and debtors, or to "defined classes" of debtors and creditors."[106] Because the California bankruptcy only exemption applied equally to all debtors and creditors in bankruptcy, the BAP found that there could be no violation of the Uniformity Clause.[107]

The BAP rejected the Trustee's *Moyses*-based argument that, because of the bankruptcy only exemption, creditors in California bankruptcies may not receive the same assets as creditors of debtors outside of bankruptcy. As the BAP correctly noted, "that is exactly the result in a non-opt-out state when a debtor chooses the federal exemption scheme,"[108] a scheme that Congress has expressly authorized. Numerous

---

[104]  422 B.R. 684 (9th Cir. BAP 2009).

[105]  *Id.* at 692.

[106]  *Id. See also Drummond v. Urban (In re Urban),* 375 B.R. 882, 891 (9th Cir. BAP 2007) (concluding that § 522's domicile requirements do not violate the Uniformity Clause because "the classification scheme applies in the same manner to all similarly situated parties").

[107]  *Id.* at 692–93.

[108]  *Id.* at 693.

other bankruptcy court cases have found no Uniformity Clause violation from bankruptcy specific exemption statutes.[109]

Although the Tenth Circuit has not squarely addressed the matter, it has gotten close, and has found the argument advanced by the Trustee to be meritless. In *Kulp v. Zeman (In re Kulp)*,[110] the Tenth Circuit interpreted a Colorado exemption of seventy-five percent of "earnings."[111] The definition of earnings included the "avails" of an individual retirement account ("IRA").[112] However, the statute then added a section only applicable in bankruptcy that the "avails" of an IRA included "profits or proceeds."[113] The Tenth Circuit parsed the language of this exemption and ultimately concluded that the debtor was permitted by the statute "to exempt seventy-five percent

---

[109] *See In re Brown*, Nos. 06-30199, 06-30872, 2007 WL 2120380, at *6–7 (Bankr. N.D.N.Y. July 23, 2007) (stating that the Uniformity Clause "contains no restriction on the states" and that the Court would, therefore, focus its analysis on the Supremacy Clause and whether conflict existed between the bankruptcy only exemption and the Bankruptcy Code); *In re Chandler*, 362 B.R. 723, 728 (Bankr. N.D.W. Va. 2007) (concluding that "the Uniformity Clause forbids only arbitrary regional differences in the provisions of the Bankruptcy Code, and private bankruptcy bills that are limited to a single debtor"); *In re Cross*, 255 B.R. 25, 31 (Bankr. N.D. Ind. 2000) (concluding that the Uniformity Clause "is not a restriction upon the states"); *In re Shumaker*, 124 B.R. 820, 826 (Bankr. D. Mont. 1991) (rejecting Uniformity Clause challenge based on the "constitutional power of a state to enact bankruptcy laws where Congress has not sought to act"); *In re Holt*, 84 B.R. 991, 1001–02 (Bankr. W.D. Ark. 1988) ("[A]ll bankruptcy debtors in Arkansas have the opportunity to elect the exemptions provided under the Arkansas opt-out statute and, therefore, the test for geographic uniformity is satisfied"); *In re Vasko*, 6 B.R. 317, 320 (Bankr. N.D. Ohio 1980) (stating that the Uniformity Clause is "only controlling as to the congressional exercise of power" and that "state laws are thus suspended only to the extent of actual conflict with the system provided by Congress").

[110] 949 F.2d 1106 (10th Cir. 1991).

[111] *Id.* at 1107.

[112] *Id.*

[113] *Id.*

Case 11-40986   Doc# 45   Filed 04/04/12   Page 25 of 51

of the entire balance of their IRAs from the bankruptcy estate."[114] Giving it only the import of a footnote, the Tenth Circuit then addressed an alternative argument by the trustee that the Colorado statute violated "the constitution's uniformity requirement for bankruptcy laws because it creates a bankruptcy exemption which is not available to other Colorado debtors."[115] The Circuit easily dismissed the Trustee's argument, stating:

> This argument is meritless. The [bankruptcy court cases cited] confuse the geographical uniformity doctrine with the well-established principle that states may pass laws which do not conflict with the federal scheme. In this case, we have no conflict because 11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions.[116]

The Tenth Circuit has thus summarily dismissed, as an issue worthy of substantive consideration, the constitutionality of a Colorado bankruptcy specific exemption.

Soon after the *Kulp* decision however, the Tenth Circuit did address more substantively, but still rejected, a trustee's argument that an Oklahoma exemption statute for IRAs "exceeded the scope of authority delegated to the States pursuant to § 522 of the Bankruptcy Code to establish bankruptcy exemptions."[117] In *Walker v. Mather (In re Walker)*, the Tenth Circuit dispatched a Uniformity Clause argument by noting that Congress was aware of the "wide disparity" in exemptions allowed by the

---

[114]   *Id.* at 1109.

[115]   *Id.* at 1109 n.3.

[116]   *Id.* (internal citations omitted).

[117]   *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

states when the opt out provision of the Bankruptcy Code was enacted.[118] The Circuit concluded that delegation to states to enact exemptions is therefore an implicit acknowledgment and approval of this disparity in exemptions, so long as an exemption is not "inconsistent with" the federal bankruptcy statute.[119]

Admittedly, neither *Kulp* nor *Walker* directly resolve the issue herein. Neither case squarely addresses a bankruptcy specific exemption statute under the Uniformity Clause. Both cases do lend credence, however, to the above-stated extrapolations from the Supreme Court case law on the Uniformity Clause—that the Uniformity Clause has never been the basis for invalidating a state bankruptcy statute, and that the Uniformity Clause has only caused invalidation of a federal bankruptcy statute when the enactment singled out an individual debtor. Both *Kulp* and *Walker* suggest that the Tenth Circuit will view the Uniformity Clause as a control on the actions of Congress, not on the states, and that a state exemption statute is constitutionally permissible as long as it does not conflict with the federal bankruptcy statute enacted pursuant to the Uniformity Clause.

Relying on this interpretation of the case law, this Court finds no Uniformity Clause violation through Senate Bill No. 12. Simply put, the exemption is a state, not a Congressional, enactment. Even if it were not a state statute outside of the Uniformity Clause's reach, the exemption applies equally to all Kansas debtors in bankruptcy. The Court will therefore turn to the Trustee's contention that Senate Bill

---

[118]  *Id.* at 900 (finding the trustee's argument "meritless.") The Oklahoma exemption in *Walker*, however, was not a bankruptcy only exemption as it was in *Kulp*.

[119]  *Id.* at 900–01.

No. 12 conflicts with the federal bankruptcy scheme.

### IV.    Senate Bill No. 12 Does Not Violate the Supremacy Clause

The Supremacy Clause of the United States Constitution states: "This Constitution, and the Laws of the United States . . . and all Treaties . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[120] The Trustee argues that Senate Bill No. 12 is both expressly and impliedly preempted by the Bankruptcy Code.[121]

As early as 1819, the Supreme Court recognized the concurrent jurisdiction present in bankruptcy, and the considerations applicable to the preemption analysis in bankruptcy. The Supreme Court stated in *Sturges v. Crowninshield* that "until the power to pass uniform laws on the subject of bankruptcies be exercised by Congress, the States are not forbidden to pass a bankrupt law."[122] Only when Congress passes a bankruptcy law are state laws on the same subject "suspended."[123] When a state statute contains "intolerable inconsistencies" with the federal bankruptcy law, the Supreme Court has concluded that the state enactment was preempted by the federal bankruptcy system then in place.[124] However, only those state statutes "which conflict with the bankruptcy laws of Congress . . . are suspended; those which are in aid of the

---

[120]  U.S. Const. art. VI, cl. 2.

[121]  *In re Gifford*, Case No. 11-40589, Doc. 44 at p. 25–33.

[122]  17 U.S. (4 Wheat) 122, 196 (1819).

[123]  *Id.*

[124]  *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929).

28

Bankruptcy Act can stand."[125]

To determine whether a state statute is preempted by federal law, "[t]he purpose of Congress is the ultimate touchstone."[126] Federal statutes can preempt state statutes either by an express statement of preemption or by implication.[127] Express preemption arises "from explicit preemption language in the statute."[128] Here, rather than expressly forbidding state action, Congress has invited it by deferring to state exemption schemes. Section 522 of the Bankruptcy Code expressly permits a state to "opt-out" of the federal exemptions in favor of state-law exemptions.[129] Kansas has opted out of the federal exemption scheme,[130] and Kansas debtors are, therefore, expressly required to utilize "State or local law" exemptions.[131]

Implied preemption includes field preemption or conflict preemption.[132] Field preemption occurs when Congress "take[s] unto itself all regulatory authority" by

_____

[125] *Stellwagen v. Clum*, 245 U.S. 605, 615 (1918); *see also In re Morrell*, 394 B.R. 405, 408 (Bankr. N.D.W. Va. 2008) (concluding that the federal and state governments have concurrent jurisdiction in bankruptcy, citing *Stellwagen v. Clum*), *aff'd sub nom*, *Sheehan v. Peveich*, 574 F.3d 248 (4th Cir. 2009).

[126] *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).

[127] *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose.").

[128] *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1241 (10th Cir. 2011).

[129] 11 U.S.C. § 522(b)(2).

[130] K.S.A. § 60-2312 (prohibiting, with exception, individual debtors from electing federal exemptions).

[131] 11 U.S.C. § 522(b)(3)(A); K.S.A. §§ 60-2301 through 60-2315 (Kansas exemptions).

[132] *Id.*

legislating in a "field which the States have traditionally occupied."[133] Implied field preemption has been found when (1) the federal regulatory scheme is so pervasive that the reasonable inference is that Congress left no room for state supplementation, or (2) the federal statute is in a field with a dominant federal interest and is "assumed to preclude enforcement of state laws on the same subject."[134]

The Trustee argues that implied field preemption is present here because "Congress has left no room" for state exemptions applicable only in bankruptcy.[135] To the contrary, Congress has placed no limit on states' ability to pass exemption schemes. As the Supreme Court has noted, "nothing in subsection (b) [of § 522] (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."[136] Surely this broad ability to opt-out of the federal exemption scheme in favor of state-enacted exemptions cannot *also* import a limit on the express grant of the exemption power to the states by Congress through the Bankruptcy Code. Again, where Congress has expressly granted to the states the power to enact state-specific exemptions, without limitation, there is no implied preemption of a state's ability to do so. Indeed, several appellate courts have concluded that "Congress has *not* occupied the field of bankruptcy regulation to the point of

---

[133] *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

[134] *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

[135] *In re Gifford*, Case No. 11-40589, Doc. 44 at 28.

[136] *Owen v. Owen*, 500 U.S. 305, 308 (1991).

Case 11-40986   Doc# 45   Filed 04/04/12   Page 30 of 51

preempting state exemption statutes."[137]

Conflict preemption occurs "where Congress has not completely displaced state regulation in a specific area" and where "state law is nullified to the extent that it actually conflicts with federal law."[138] Implied conflict preemption has been found "when it is impossible . . . to comply with both state and federal requirements."[139] This can be a physical impossibility: "A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce."[140] Short of physical impossibility, state law may still stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[141] "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."[142] The Trustee argues implied conflict preemption by alleging that Senate Bill

---

[137] *Sticka v. Applebaum (In re Applebaum)*, 422 B.R. 684, 689 (9th Cir. BAP 2009); *see also Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir. 1983) ("Congress did not intend to preempt bankruptcy exemptions through promulgation of 11 U.S.C. § 522(d) since it vested in the states the ultimate authority to determine their own bankruptcy exemptions."); *Matter of Sullivan*, 680 F.2d 1131, 1137 (7th Cir. 1982) (finding no implied conflict preemption based on the grant by Congress to states to set their own exemptions).

[138] *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

[139] *PLIVA, Inc. v. Mensing*, 564 U.S. __, 131 S. Ct. 2567, 2577 (2011).

[140] *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963).

[141] *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 679 (2003) (Thomas, J., concurring) ("Obstacle pre-emption turns on whether the goals of the federal statute are frustrated by the effect of the state law.").

[142] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (stating that a court reviewing

31

No. 12's bankruptcy only exemption is a sufficient obstacle to the full purposes and effect of Congress through the Bankruptcy Code in two ways.

First, the Trustee argues that Congress intended, through the Bankruptcy Code, that exemptions be uniform within a state, applicable to all citizens within a state. The Trustee argues that Congress entered the field of bankruptcy to further bankruptcy consistency, and prevent the result of different citizens within a state having different exemptions.[143] The Court, however, believes that the statutory language points to the opposite conclusion. Section 522(b) refers to "state or local law" exemptions. Surely this means Congress is aware that citizens could be treated differently, based on the particular enactments of a state legislature. In fact, the Supreme Court has recently stated that "[t]he case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them."[144] This rule of thumb seems especially apt advice when, as here, Congress has expressly prescribed the federal/state concurrent scheme through the opt-out provision.[145]

---

an implied conflict preemption claim must "examine the explicit statutory language and the structure and purpose of the statute").

[143] *In re Gifford*, Case No. 11-40589, Doc. 44 at 31.

[144] *Wyeth v. Levine*, 555 U.S. 555, 575 (2009) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. at 166–67).

[145] In this manner, the present matter is also different from *Perez v. Campbell*, a 1971 Supreme Court opinion addressing a Supremacy Clause challenge to an Arizona statute in conflict with federal bankruptcy legislation. 402 U.S. 637 (1971). In an oft-quoted conclusion from *Perez*, the Supreme Court stated that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." *Id.* at 652. In that case, however, the Court found an actual conflict between an

In addition, the Trustee does not answer how either of the purposes of the Bankruptcy Code are adversely affected by a state-provided, bankruptcy only exemption.[146] As discussed above, the Bankruptcy Code serves two purposes: to give the debtor in bankruptcy a fresh start and to ensure the fair and equitable treatment of the creditors of a debtor in bankruptcy. Senate Bill No. 12 presents no obstacle to either of these purposes.[147] The exemption was designed to protect the most low-income debtors in bankruptcy, which enables those debtors to have a fresh start, thus fulfilling the first goal of the Bankruptcy Code. In addition, the exemption does not effect how a creditor of a debtor in bankruptcy is treated any more than *any* exemption reduces the distribution to that creditor. The Bankruptcy Code seeks to ensure the *ratable* distribution of estate property to creditors: the allowance of state-law created exemptions enables each state to determine how much of a debtor's property is included in that distribution and Senate Bill No. 12 does not interfere with this goal. The Court finds nothing in the exemption that would serve as an obstacle to "the full purposes and objectives of Congress."[148]

---

Arizona statute governing the discharge of judgments resulting from an automobile accident lawsuit and the specific provision of the federal bankruptcy legislation on the same topic. *Id.* at 651–52. There is no *actual conflict* between the state law and the federal law in this case, and the federal/state scheme is expressly intended.

[146] *Crosby*, 530 U.S. at 373 (noting that a finding of implied conflict preemption requires a showing that the state law is "an obstacle to the accomplishment of Congress's full objectives under the federal" statute).

[147] Of course, the Court can imagine scenarios where a state enacts an exemption scheme so contrary to the bankruptcy fresh start or the ratable distribution of assets that the exemptions conflict with the purpose and objectives of the Bankruptcy Code. That scenario is simply not present here.

[148] *Hines*, 312 U.S. at 67; *see also Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 679 (2003) (Thomas, J., concurring) ("Obstacle pre-emption turns on whether the

33

Second, the Trustee alleges that Senate Bill No. 12 interferes with the distribution of estate property to creditors. The Trustee cites *Kanter v. Moneymaker (In re Kanter)*, a case from the Ninth Circuit finding a California statute—not an exemption statute, but one prohibiting trustees from acquiring an interest in money recovered for general damages by parties to personal injury actions—invalid under the Supremacy Clause.[149] The Ninth Circuit concluded that the California statute conflicted with the provision of the federal bankruptcy law in force in 1974 that vested in the trustee the title to "property, including rights of action."[150] The Circuit found that the California statute limited the trustee's powers under the federal bankruptcy law, which granted the trustee "the rights and powers of . . . a creditor who obtained a judgment against the bankrupt upon the upon the date of bankruptcy."[151]

The Trustee focuses on the following language from *Kanter* to support her Supremacy Clause argument:

> [The California statute] thus stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, since it would operate to deny to the trustee assets which could ordinarily be reached in satisfying the claims of general creditors. [The statute] revives the race to the courthouse by creditors seeking to avoid the threat of having both their claims discharged and the assets necessary to satisfy them denied to the trustee. As the Court noted . . ., any state legislation which frustrates the full effectiveness of federal law is rendered

---

goals of the federal statute are frustrated by the effect of the state law.").

[149] 505 F.2d 228 (9th Cir. 1974).

[150] *Id.* at 229–30.

[151] *Id.* at 231.

invalid by the Supremacy Clause.[152]
The Trustee alleges that Senate Bill No. 12 "shields assets, specifically the EICs, that otherwise would be available to the trustee for distribution."[153]

But an exemption statute by definition shields assets from a trustee. That is the purpose of an exemption, and Congress expressly provided for exemptions in § 522. The differences from the facts of this case and those present in *Kanter* abound. Foremost, *Kanter* was decided prior to the Bankruptcy Reform Act of 1978, and prior to the re-worked definitions of property in the Bankruptcy Code. In addition, the state statute was found *not* to be an exemption provision, and therefore *Kanter* found the state statute to be in conflict with an entirely separate provision of the prior bankruptcy law. Here, there is no language of the current Bankruptcy Code with which Senate Bill No. 12 conflicts.

As the Ninth Circuit BAP stated in *Applebaum*,[154] Congress has specifically sanctioned a difference in the distribution to creditors between a debtor in bankruptcy and a general debtor outside of bankruptcy. The *Applebaum* court stated:

> The Trustee argues that under California's bankruptcy-only exemption scheme, creditors might not receive the same assets that otherwise might be available to them under California's generally applicable exemption statute, or, than those allowed by federal law. However, that is exactly the result in a non-opt-out state when a debtor chooses the federal exemption scheme. In such instances, it may be that

---

[152] *Id.* (internal citations, footnote, and quotations omitted).

[153] *In re Gifford*, Case No. 11-40589, Doc. 44 at 33.

[154] *Sticka v. Applebaum (In re Applebaum)*, 422 B.R. 684, 689–91 (9th Cir. BAP 2009).

35

> the bankruptcy trustee will not recover the same assets of
> a debtor for distribution that he or she would under state
> law.[155]

When a state has not opted out of the federal exemption scheme, the debtor in that state chooses between the use of the federal exemptions or the applicable non-bankruptcy exemptions.[156] A minority of states have chosen *not* to opt out of the federal exemptions.[157] In those states, there could certainly be a difference between the property available to creditors under the state's laws and the distribution to creditors in bankruptcy of property available after the federal exemptions are applied.

For example, in Kansas, a general debtor can protect a portion of their wages from garnishment.[158] Under the federal exemptions, there is no exemption for the debtor's wages.[159] If Kansas had *not* opted out of the federal exemptions, then the Kansas debtor in bankruptcy choosing the federal exemptions would not be able to exempt their wages and, therefore, there would be more estate property available for distribution to creditors in bankruptcy than if the debtor was outside of bankruptcy.[160]

---

[155] *Id.* at 693.

[156] 11 U.S.C. § 522(b)(1).

[157] 4 *Collier on Bankruptcy* ¶ 522.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[158] K.S.A. § 60-2310.

[159] 11 U.S.C. § 522(d).

[160] A similar example could be given where the federal exemptions are *more* generous than the protections afforded a debtor not in bankruptcy in Kansas if Kansas were to no longer opt-out of the federal exemptions, resulting in the creditors in bankruptcy receiving less than the creditors of a debtor outside of bankruptcy. *See, e.g.*, 11 U.S.C. § 522(d)(11)(D)(exempting the "debtor's right to receive, or property that is traceable to– a payment, not to exceed $21,625, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom

Disparity in exemption schemes, whether bankruptcy-only or otherwise, may affect an individual's incentive to file bankruptcy—but this is not, standing alone, a sufficient basis for finding interference with the Bankruptcy Code, especially in an area of the Code where differences are contemplated.[161] The Trustee's general reference to interference "with the federal bankruptcy distribution scheme,"[162] without more, is insufficient.

This Court acknowledges a split of authority with respect to the validity of bankruptcy only exemptions in the face of Supremacy Clause challenges.[163] Due to

---

the debtor is a dependent").

[161] The amicus brief of Debtor Rolin argues that unsecured creditors in Kansas have no right to claim an individual's EIC outside of bankruptcy. *In re Gifford*, Case No. 11-40589, Doc. 49 at p. 8 ("However, Trustee cites no statute or case law that permits unsecured creditors to lay claim to EICs outside bankruptcy and this lawyer knows of none."). The Court presumes that if a Kansas general debtor outside of bankruptcy receives a tax refund and deposits it in a bank account, that account may be subject to garnishment, but that a tax refund of a general debtor in Kansas is difficult for a creditor to capture while still in the hands of the taxing authority.

As the testimony in support of Kansas Senate Bill No. 12 stated, a low-income debtor entitled to an EIC is generally a single parent, using the tax refund for necessities. Minutes of the House Judiciary Committee, 2011 Reg. Sess., Attach. No. 4 (Kan. Mar. 3, 2011) (Testimony Presented to House Judiciary Committee by John R. Hooge), attached as exhibit to *In re Gifford*, Case No. 11-40589, Doc. 53. Such an individual may not have a bank account, or may not deposit the money, but, rather, use the tax refund immediately to pay bills. It certainly seems likely, therefore, that Kansas Senate Bill No. 12 simply levels the playing field, and allows a debtor inside of bankruptcy to keep their EIC the same way general debtors, and those debtors who can wait to file bankruptcy until after their EIC is spent, likely retain and spend their EIC outside of bankruptcy.

While the record before this Court does not concretely support such a supposition, there is ample other support for the Court's determination that Kansas Senate Bill No. 12 does not, in practice, conflict with the Bankruptcy Code's treatment of creditors.

[162] *In re Gifford*, Case No. 11-40589, Doc. 44 at 33.

[163] The following cases have upheld Supremacy Clause challenges of bankruptcy only exemption statutes: *In re Regevig*, 389 B.R. 736, 740 (Bankr. N.D. Ariz. 2008) (finding Supremacy Clause violation based on controlling 9th Circuit precedent, *Kanter*); *In re Cross*, 255 B.R. 25, 34 (Bankr. N.D. Ind. 2000) (concluding bankruptcy only exemption is preempted because it "changes the distribution of assets between debtors and creditors and, thus, frustrates the full effectiveness of federal law by changing the balance between

37

Congress's express delegation in the Bankruptcy Code to states to create their own exemptions, however, without any limiting language to that delegation, the Court finds Kansas shares concurrent jurisdiction with the federal government in this discrete area. Because of the concurrent nature of state/federal authority in bankruptcy, and because the Trustee has shown no conflict from Senate Bill No. 12 with the language or goals of the Bankruptcy Code, the Court finds no Supremacy Clause violation here. As the Fourth Circuit stated when it considered a preemption challenge to a bankruptcy only exemption statute:

> Section 522(b)(1) affords the states the authority to restrict their respective residents to exemptions promulgated by the state legislatures, if they so choose. This statutory provision is an express delegation to the states of the power to create state exemptions in lieu of the federal bankruptcy exemption scheme. Congress has not seen fit to restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases, and we are without authority to impose such a requirement.[164]

---

debtors and creditors that Congress created in the Bankruptcy Code"); *In re Reynolds*, 24 B.R. 344, 347 (Bankr. S.D. Ohio 1982) (holding that § 522 permits states only to adopt uniform exemptions).

The following cases have rejected Supremacy Clause challenges to bankruptcy only exemption statutes: *Sheehan v. Peveich*, 574 F.3d 248, 252 (4th Cir. 2009) (concluding that § 522 is an express delegation to create state exemptions and that Congress did not "restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases"); *Sticka v. Applebaum (In re Applebaum)*, 422 B.R. 684, 689–91 (9th Cir. BAP 2009) (finding "no conflict between the purpose and goals of the Bankruptcy Code and the California bankruptcy-only exemption statute" and stating that "[s]imply because the exemptions differ from the federal exemptions (or from its non-bankruptcy counterpart), does not mean that such differences create a conflict that impedes the accomplishment and execution of the Bankruptcy Code"); *In re Brown*, No. 06-30199, 2007 WL 2120380, at *15 (Bankr. N.D.N.Y. July 23, 2007) (concluding that New York's bankruptcy only exemption "was commensurate with § 522(b)'s goals of balancing the state's interests in defining exemptions according to the needs and conditions of the locality, and the Code's fresh-start policy and uniformity" (internal quotations omitted)).

[164] *Sheehan v. Peveich*, 574 F.3d 248, 252 (4th Cir. 2009).

The Court agrees with this analysis. There is simply no conflict, express or implied, between Senate Bill No. 12 and the Bankruptcy Code.

## V. Additional Arguments Raised by the Trustee's Objection[165]

### A. Reference to the Federal Bankruptcy Reform Act of 1978

Senate Bill No. 12 begins as follows: "[a]n individual debtor under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.), may exempt. . . ."[166] The Trustee argues that because Senate Bill No. 12 refers to debtors under the "federal bankruptcy reform act of 1978," it necessarily does not apply to debtors filing a petition under the Bankruptcy Code as amended in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").[167] A similar argument has previously been rejected within this District, and this Court is, likewise, not persuaded.

As Judge Nugent noted in *In re Foth*,[168] when the Bankruptcy Reform Act of 1978 became effective on October 1, 1979, Congress expressly repealed the prior bankruptcy statute.[169] To the contrary, "[w]hile BAPCPA significantly modified the provisions of the 'federal bankruptcy reform act of 1978,' Congress did not repeal the

---

[165] In the initial objection to the claimed exemption, the Trustee additionally claimed that Senate Bill No. 12 violated the "Due Process and Equal Protection Clause of the 14th Amendment to the United States Constitution." *In re Gifford*, Case No. 11-40589, Doc. 12 ¶ 3; *see also id.* Doc. 34 ¶ 15. The Trustee has expressly abandoned this argument in her final brief, *id.* Doc. 61 p. 14–15, and for that reason, the Court need not address the issue.

[166] S. 12, 2011 Reg. Sess. (Kan. 2011), to be codified at K.S.A. § 60-2515.

[167] Pub. L. 109-8, 119 Stat. 23, § 106 (Apr. 20, 2005).

[168] No. 06-10696, 2007 WL 4563434, at *4 (Bankr. D. Kan. Dec. 21, 2007) (citing Pub. L. 95-598, 92 Stat. 2549, title IV, § 401(a) (Nov. 6, 1978)).

[169] *In re Foth*, No. 06-10696, 2007 WL 4563434, at *4 (Bankr. D. Kan. Dec. 21, 2007) (citing Pub. L. 95-598, 92 Stat. 2549, title IV, § 401(a) (Nov. 6, 1978)).

Case 11-40986    Doc# 45    Filed 04/04/12    Page 39 of 51

Federal Bankruptcy Reform Act of 1978 as it did the 1898 Act in 1978."[170] In addition, as in *Foth*, Senate Bill No. 12 expressly refers to "11 U.S.C. § 101, et seq." Those provisions of Title 11 "now embod[y] BAPCPA. Much of the substance of title 11 as enacted in the 1978 Code remains intact . . . [and] [n]early all of the Code's structure remains in place."[171] Judge Nugent also noted in *Foth* that "BAPCPA's amendments were not the first to the 1978 Code; indeed the Code was amended a number of times between 1978 and 2005, and notably so in 1984 and 1994."[172]

Finally, Senate Bill No. 12 refers to an "individual debtor" under the federal bankruptcy reform act. The definition of the term "debtor" under the 1978 Act is the same as the term is defined after the BAPCPA amendments. Under the 1978 Act, a "debtor" was defined as a "person or municipality concerning which a case under this title has been commenced."[173] Under the current version of the Bankruptcy Code, the definition of "debtor" remains the same.[174] The individual referred to as a "debtor" in bankruptcy has not changed—BAPCPA did not change that portion of the code expressly referenced in Senate Bill No. 12.[175] The Trustee's argument is without merit

[170] *Id.*

[171] *Id.*

[172] *Id.*

[173] Pub. L. 95-598, 92 Stat. 2549, § 101 (Nov. 6, 1978).

[174] 11 U.S.C. § 101(13).

[175] In addition, the Court will not read the exemption in a way that would produce an absurd result. *See In re Western Pacific Airlines, Inc.*, 273 F.3d 1288, 1292 (10th Cir. 2001) ("The goal in statutory interpretation is to determine and give effect to the intent of the legislature. To ascertain that intent, it is presumed that a just and reasonable result is intended."). The Trustee's interpretation of the exemption would mean that the Kansas legislature created a new exemption that would be applicable to no debtors, which is simply

40

and is rejected.

## B. Reprioritization of Payment of Claims

The Trustee next argues that Senate Bill No. 12 impermissibly reprioritizes the payment of claims in bankruptcy cases. Under Senate Bill No. 12, there is a qualification to the exemption, which states: "Nothing in this section shall be construed to limit the right of offset, attachment or other process with respect to the earned income tax credit for the payment of child support or spousal maintenance." Protecting her own turf, the Trustee points to § 507(a) of the Bankruptcy Code, which specifies the order in which expenses and claims are to be paid.[176] Pertinent here, under § 507 the Trustee's administrative expenses can be paid before the payment of domestic support obligations.[177] Because of this, the Trustee argues that the exemption conflicts with federal law,[178] and states that "it is impossible to comply with both Section 507(a) and Senate Bill 12."[179]

This Court finds no conflict, however. Under the Bankruptcy Code, when a

---

illogical.

[176] 11 U.S.C. § 507(a) (providing the order in which priority claims are to be paid).

[177] *Id.* § 507(a)(1)(C) ("If a trustee is appointed . . ., the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B) [relating to domestic support obligations], to the extent that the trustee administers assets that are otherwise available for the payment of such claims.").

[178] The Trustee cites as an example the Supreme Court case of *Barker v. Kansas*, 503 U.S. 594 (1992). The case deals with the constitutional doctrine of intergovernmental tax immunity as applied to state taxation of military retirement pay, a subject which does not appear applicable to the present facts.

[179] *In re Gifford*, Case No. 11-40589, Doc. 44 at 35.

41

debtor files a petition for bankruptcy relief, an estate is created.[180] That bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[181] However, once an exemption of property is claimed, and then allowed by the bankruptcy court, that property is removed from the estate.[182] Once property is removed from the estate, it is not available for distribution to creditors.[183] Therefore, while the Bankruptcy Code directs the Trustee to "collect and reduce to money the property of the estate,"[184] once an exemption applies, that property is not available for distribution by the Trustee.[185] There is no conflict with § 507, because that section only applies to the distribution of estate property, not exempted property.

### C. Unauthorized Transfer Under 11 U.S.C. § 549

Under the Bankruptcy Code, the Trustee can avoid a transfer of property of the estate if that transfer occurs after the bankruptcy case is commenced and the transfer is not authorized by the Code or the Court.[186] The Trustee argues that a postpetition

---

[180] 11 U.S.C. § 541(a) ("The commencement of a case under . . . this title creates an estate.").

[181] *Id.* § 541(a)(1).

[182] *See id.* § 522(b)(1) ("Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.").

[183] *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992) ("The Code . . . allows the debtor to prevent the distribution of certain property by claiming it as exempt.").

[184] 11 U.S.C. § 704(a)(1).

[185] *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.").

[186] 11 U.S.C. § 549(a).

42

transfer occurs through the application of the EIC exemption, essentially arguing that the EIC became part of the Westbys' bankruptcy estate upon the filing of the bankruptcy petition and was then transferred from the estate to the Westbys with Senate Bill No. 12.[187]

Again, however, the Trustee does not give due credit to exemptions under the Bankruptcy Code. When a debtor is entitled to claim an exemption, that property is withdrawn from the estate,[188] and there is no postpetition transfer of the property by virtue of claiming an exemption. Under the Trustee's theory, *all* exemption statutes would create a postpetition transfer of property, which flies in the face of the exemption provisions in § 522.[189]

### D. Conflict with Portions of the Internal Revenue Code

Finally, the Trustee argues that Senate Bill No. 12 conflicts with provisions of the IRC. Specifically, the Trustee argues that Senate Bill No. 12 conflicts with § 6402 of title 26.[190] That section states that a federal tax refund may be offset to pay past-due

---

[187] *In re Gifford*, Case No. 11-40589, Doc. 44 at 37–38.

[188] *Owen*, 500 U.S. at 308.

[189] For this reason, among many others, the Tenth Circuit BAP opinion in *Rupp v. Duffin (In re Duffin)*, 457 B.R. 820 (10th Cir. BAP 2011), upon which the Trustee relies, is inapplicable. In *Duffin*, the BAP considered whether a trustee could object to an exemption under 11 U.S.C. § 544(a), utilizing his "rights and powers" under that statute as a hypothetical creditor. *Id.* at 827–29. The BAP analyzed a Utah exemption that excluded from its reach prepetition payments on life insurance policies. *Id.* at 829. The BAP concluded that, "[t]hrough the use of a trustee's hypothetical powers" under § 544, the trustee could stand as a creditor would, and gain access to the *non-exempt* funds. As should be abundantly clear from the discussion herein, Senate Bill No. 12 makes a debtor's EIC exempt, and no creditor of a debtor in bankruptcy could reach that exempt asset, just as the Trustee may not.

[190] *In re Gifford*, Case No. 11-40589, Doc. 44 at 36–37.

state income tax obligations and other federal debt obligations.[191] The Trustee argues that Senate Bill No. 12 "overrides" § 6402 because it causes a refund of the EIC to debtors with an exception for the payment of domestic support obligations.

Under Senate Bill No. 12, a debtor can exempt "the debtor's right to receive tax credits allowed pursuant to" the EIC.[192] The statute further states that the exemption "shall not exceed the maximum credit allowed to the debtor under" the EIC, "for one tax year."[193] This language creates no conflict with § 6402. Under the IRC, if an individual's federal tax withholding exceeds that individual's federal tax liability, then the individual is entitled to a refund of the overpayment.[194] The IRC, however, authorizes offsets for payment of certain items delineated in § 6402.[195] The result of an offset under § 6402 is that the individual has no right to receive the amount that has been offset.[196] Senate Bill No 12 in no way conflicts with this scheme: the statute provides an exemption only if the individual has a "right to receive" a refund based on the EIC. If the debtor has no right to receive the EIC as a refund, based on § 6402 offsets or for whatever reason, then there is no refund available to which the exemption could apply. Senate Bill No. 12 merely provides that if the Debtor receives a refund attributable to the EIC, then the exemption will apply to the refund up to the

---

[191] 26 U.S.C. § 6402.

[192] S. 12, 2011 Reg. Sess. (Kan. 2011), to be codified at K.S.A. § 60-2315.

[193] *Id.*

[194] *Sorenson v. Sec'y of Treasury*, 475 U.S. at 859.

[195] *Id.*

[196] *Id.*

44

maximum EIC amount, except for the payment of domestic support obligations.

Amicus Trustee Robert Baer argues an additional conflict with the IRC, citing a conflict with § 1398(g)(4) of title 26.[197] Section 1398(g)(4) specifies that the bankruptcy estate is entitled to certain tax features and attributes of the debtor. Because of this, Amicus Baer argues that Congress has determined that tax refunds should be property of the bankruptcy estate for distribution to creditors. There is no dispute that the Westbys' 2011 tax refund becomes part of the bankruptcy estate upon their filing of their bankruptcy petition. Section 522 of the Bankruptcy Code, however, permits a debtor to apply exemptions to that bankruptcy estate. Section 522(b) permits Kansas to opt-out of the federal exemption scheme in favor of state or local exemptions, of which, Senate Bill No. 12 is one. There is simply no conflict between Senate Bill No. 12 and the general recognition of § 1398(g)(4) that a tax refund is generally part of the property of the bankruptcy estate.

## VI. Application to the Westbys

The Westbys filed their 2011 federal and Kansas tax returns and received their tax refunds on March 5, 2012. On their tax return, the Westbys claim a $5751 federal EIC and a $1035 state EIC. The Westbys' federal return shows a refund of $6702, and their maximum EIC is within this amount. The Westbys are therefore entitled to exempt the $5751 of this federal refund pursuant to Senate Bill No. 12. The Westbys' Kansas tax return shows a refund of $1490 and an EIC of $1035. Likewise, the Westbys may exempt the entirety of this Kansas EIC pursuant to Senate Bill No. 12.

---

[197] *In re Gifford*, Case No. 11-40589, Doc. 59 at 7–8.

The Trustee makes one alternative argument within her objection to exemption, citing *Barowsky v. Serelson (In re Barowsky)*.[198] In *Barowsky*, the Tenth Circuit held that the prepetition portion of a debtor's tax refund is property of the bankruptcy estate when the relevant tax year did not end until after the petition in bankruptcy was filed.[199] The Trustee argues that if the Court finds Senate Bill No. 12 survives her objection, the Trustee is still entitled to the pro rata portion of the EIC measured from the Westbys' petition date.

The Tenth Circuit's holding in *Barowsky* is not applicable here. In that case, the Court was dealing with a non-exempt asset, the Chapter 7 debtor's federal income tax refund. The Court cited the Supreme Court case, *Kokoszka v. Belford*,[200] which held that a tax refund—attributable to the entire tax year that had been completed before the bankruptcy petition was filed—was "property," and therefore part of the bankruptcy estate. Relying on this holding, the *Barowsky* court concluded that the portion of the tax refund that was attributable to that portion of the tax year that had expired prior to the filing of a bankruptcy petition was property of the bankruptcy estate.[201]

Again, the Trustee fails to acknowledge the difference between estate property and exempt property. Because of the exemption provided by Senate Bill No. 12, the $5751 federal EIC and the $1035 Kansas EIC received by the Westbys are not estate

---

[198]  946 F.2d 1516 (10th Cir. 1991).

[199]  *Id.* at 1517–18.

[200]  417 U.S. 642 (1974).

[201]  946 F.2d at 1517–18.

46

property. Senate Bill No. 12 explicitly exempts the "maximum credit" for "one tax year." Therefore, a pro rata division would not be appropriate, because Senate Bill No. 12 exempts the property from the estate entirely.

Finally, the Trustee argues that Senate Bill No. 12 is ineffectual, because it used the wrong words to describe the purported exemption.[202] The statute exempts "the debtor's right to receive tax credits," rather than specifying an exemption for the tax *refund* in an amount not to exceed the maximum amount attributable to the EIC. The Trustee argues that because an individual has no right to receive an EIC as cash, the exemption has no force.

The Tenth Circuit has noted, however, that "EICs are to be treated as tax refunds."[203] The Circuit in *In re Montgomery* held that an individual's tax credits, after application to the tax otherwise owed, are considered an overpayment of tax under the IRC when they exceed the tax owed, and result in a tax refund.[204] Therefore, the exemption provided by Senate Bill No. 12 is reflected in the individual's tax refund. Under Kansas law, exemption statutes are to be liberally construed for the benefit of the debtor.[205] Here, the exemption is of the "right to receive tax credits allowed pursuant to" the EIC. The EIC is transferred to the debtor *through* the tax refund, and

---

[202] *In re Gifford*, Case No. 11-40589, Doc. 44 at 5–9.

[203] *In re Montgomery*, 224 F.3d 1193, 1195 (10th Cir. 2000).

[204] *Id.* at 1194.

[205] *Hodes v. Jenkins (In re Hodes)*, 308 B.R. 61, 65 (10th Cir. BAP 2004) ("Under Kansas law, exemption statutes are to be liberally construed in favor of those intended by the legislature to be benefitted."); *In re Hall*, 395 B.R. 722, 730 (Bankr. D. Kan. 2008) (stating that "the Kansas Supreme Court has directed that exemption claims are to be liberally construed in favor of debtors").

therefore applies to the cash refund. This interpretation of the Kansas statute complies with the liberal interpretation owed.

Amicus Trustee Baer also argues that the exemption is ineffectual because there is no way to determine what portion of the total tax refund is attributable to the EIC and not to some other tax credit. The Tenth Circuit BAP was recently asked to similarly interpret the Colorado exemption of the "full amount of any federal or state income tax refund attributed to an earned income tax credit or a child tax credit."[206] Acknowledging Colorado's liberal interpretation of exemption laws for the benefit of debtors, the BAP defined the word "attribute" to exempt "that part of the refund that is caused or brought about by the child tax credit."[207]

Senate Bill No. 12 provides that the amount to be exempted is the "maximum credit allowed" for "one tax year." Regarding federal returns, the maximum credit allowed is the amount of the EIC permitted by the IRC under 26 U.S.C. § 32. Regarding state returns, that amount is the percentage of the federal EIC designated by the Kansas statutes under K.S.A. § 79-32,205. As a result, the amount provided for by the exemption is the amount of the tax refund the debtor had the right to receive, up to the maximum amount of the EIC. For the Westbys, the federal EIC was $5751 and the total federal tax refund was $6702. The Kansas EIC was $1035 and the total Kansas tax refund was $1490. Therefore, the amount of the exemption provided for by Senate Bill No. 12 is $5751 plus $1035, or $6786.

---

[206] *Dunckley v. Cohen (In re Dunckley)*, 452 B.R. 241, 243 (10th Cir. BAP 2011).

[207] *Id.* at 243–44 (internal quotations omitted).

## Conclusion of the Court

The Court concludes that the Trustee has not carried her "burden of proving that the exemptions are not properly claimed."[208] The Court overrules the Trustee's objection to the Westbys' exemption.

**It is, therefore, by the Court Ordered** that the Trustee's Objection to Debtors' Claim of Exemptions[209] is overruled.

**It is further Ordered** that the hearing previously scheduled in this case for April 11, 2012, at 9:00 a.m. to consider the Trustee's Objection is cancelled.

This Order shall be placed on the Court's website. Additional objections to exemption challenging the constitutionality of the EIC exemption are held under advisement, pending resolution of any appeal in this case.[210] In the event no appeal is taken, the Court will re-set the objections to exemption for hearing, and determine at that point, after input from the parties, how it will proceed.

The Court previously ordered that the tax refunds in these cases be held in trust, pending the Court's decision on the constitutionality of the EIC exemption. The funds previously held in trust pursuant to the Court's prior orders shall now be

---

[208] Fed. R. Bankr. P. 4003(c).

[209] Doc. 10.

[210] These additional cases are: *In re Bonnette*, Case No. 11-40985; *In re Jones*, Case No. 11-40996; *In re Cook*, Case No. 11-41054; *In re Soza*, Case No. 11-41012; *In re Sequeira*, Case No. 11-41140; *In re Schumock*, Case No. 11-41142; *In re Baker*, Case No. 11-41394; *In re Freel*, Case No. 11-41446; *In re Railsback*, Case No. 11-41546; *In re Swagerty*, Case No. 11-41562; *In re Moore*, Case No. 11-41606; *In re Hilderbrand*, Case No. 11-41670; *In re Diehl*, Case No. 11-41705; *In re Johnson*, Case No. 11-41749; *In re Rodriguez*, Case No. 11-41862; *In re Roberts*, Case No. 11-41943; *In re Wolford*, Case No. 11-42000; *In re Wilson*, Case No. 11-42031; *In re Wright*, Case No. 11-42052; *In re Downs*, Case No. 11-42086; *In re Nichols*, Case No. 12-40004.

49

released to the Debtors, both in this case and in all cases in which a Trustee has filed an objection to the exemption based on the constitutionality of the EIC.

The Court's previous Case Management Order and First Supplement to that Order, both available on the Court's website, required the Debtors to either: (1) file a Notice with the Court informing it that the Debtor is entitled to a refund stemming from the EIC, along with additional details; or (2) amend Schedule C to remove the claimed EIC exemption. In cases where an amended Schedule C is filed removing the claimed exemption, the Trustee is required to withdraw the objection to exemption as moot. In the following cases, these procedures have been complied with, or a motion for compromise has been filed, and the hearing set in the case for April 11, 2012, at 9:00 a.m. is cancelled:

> *In re Sequeira*, Case No. 11-41140;
> *In re Schumock*, Case No. 11-41142;
> *In re Baker*, Case No. 11-41394;
> *In re Railsback*, Case No. 11-41546;
> *In re Moore*, Case No. 11-41606;
> *In re Hilderbrand*, Case No. 11-41670;
> *In re Diehl*, Case No. 11-41705;
> *In re Johnson*, Case No. 11-41749; and
> *In re Wolford*, Case No. 11-42000.

In the following cases, the required procedures have *not* been complied with, and the cases remain set for hearing on April 11, 2012, at 9:00 a.m.:

> *In re Bonnette*, Case No. 11-40985;
> *In re Jones*, Case No. 11-40996;
> *In re Cook*, Case No. 11-41012;
> *In re Soza*, Case No. 11-41054;
> *In re Freel*, Case No. 11-41446;
> *In re Swagerty*, Case No. 11-41562;
> *In re Rodriguez*, Case No. 11-41862;
> *In re Roberts*, Case No. 11-41943;

*In re Wright*, Case No. 11-42052;
*In re Downs*, Case No. 11-42086;
*In re Nichols*, Case No. 12-40004.

The Trustee's motion to file a supplemental brief, filed as Doc. 77 in *In re Gifford*, Case No. 11-40589, is denied. Debtors' motions to file a supplemental brief, filed as Doc. 43 in *In re Westby*, Case No. 11-40986, Doc. 37 in *In re Schumock*, Case No. 11-41142, and Doc. 68 in *In re Moore*, Case No. 11-41606, are also denied. Pursuant to the Court's prior orders, supplemental briefs were to be limited to situations where "the facts have changed sufficiently to cause a different legal conclusion . . . after any return is filed or refund issued."[211] The Court has considered the proposed briefs and they do not comply with this directive.

# # #

---

[211] *See, e.g.*, Doc. 35 at 9.